In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3292

PAMELA S. HANSON,

*Plaintiff-Appellant,*

*v.*

CATERPILLAR, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CV 4809—**James B. Zagel**, *Judge.*

ARGUED MARCH 29, 2012—DECIDED AUGUST 3, 2012

Before KANNE, ROVNER, and WILLIAMS, *Circuit Judges*.

KANNE, *Circuit Judge.* Pamela Hanson brought this action alleging that her employer, Caterpillar, Inc., fired her in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*. The district court granted summary judgment for Caterpillar, reasoning that Hanson was not a "qualified individual with a disability" as defined by the ADA. We affirm.

**I. BACKGROUND**

On October 11, 2004, Caterpillar hired Pamela Hanson as a supplemental assembler for its manufacturing plant in Aurora, Illinois. Under the plant's collective bargaining agreement, supplemental employees work forty hours per week on a temporary but indefinite basis. They are not entitled to seniority rights and benefits in the same way as full-time employees. Practically speaking, this means that supplemental employees are last in line for job reassignments, which are generally awarded based on seniority. As an assembler on the 980-tractor line, Hanson attached steering shafts, hydraulic hoses, toolboxes, and side panels to the tractor cab. These tasks required Hanson to climb onto the tractor, enter and exit tight spaces, turn her head and neck from side-to-side, and carry and install equipment weighing between five and fifteen pounds. Hanson conceded that some of these tasks were physically demanding.

Just two weeks into her stint as an assembler, Hanson injured her neck while installing a hydraulic hose. Hanson did not seek medical attention nor did she immediately report her injury to plant management. Rather, Hanson claims that a union representative cautioned that reporting her injury to a supervisor could result in termination. Despite the warning, Hanson finally disclosed her injury to management on December 3, 2004, five weeks after the injury. That same day, Hanson visited Dr. William Roggenkamp, the company's full-time physician. During the examination, Dr. Roggenkamp ordered x-rays, which revealed marked

spurring between her fourth and fifth cervical vertebrae and arthritis in the front of her neck. She was then given over-the-counter pain medicine, referred to onsite physical therapy, and placed on the following medical restrictions: (1) no lifting over ten pounds; (2) no pushing or pulling over ten pounds with either arm; (3) no rotating or bending her neck; and (4) no overhead work. Because of these restrictions, both Al Kitterman, Hanson's supervisor, and Dee Sheffer, Move Coordinator,[1] agreed to temporarily place Hanson on light-duty work, filing papers in the location of the plant known as "the cage." Hanson apparently performed this work without pain.

Hanson visited Dr. Roggenkamp again on December 6 and 7. Although Hanson suggested that she was feeling better, Dr. Roggenkamp noted that her neck pain persisted when she bent forward to read and at night. Based on this evaluation, Dr. Roggenkamp diagnosed Hanson with acute cervical syndrome with significant calcification between the fourth and fifth vertebrae. He then referred Hanson to Dr. Thomas McGivney, a local spine specialist. On December 9, Dr. McGivney examined Hanson and recommended a regimen of physical therapy and a set of slightly less onerous medical restrictions than those imposed by Dr. Roggenkamp (the two differences being that Hanson was

---

[1] As Move Coordinator, Sheffer was charged with determining whether Hanson's medical restrictions permitted her to work in another position at the plant.

restricted from lifting more than twenty pounds and she was not restricted from rotating or bending her neck). Despite learning of Dr. McGivney's relaxed restrictions, Dr. Roggenkamp nonetheless kept his restrictions in place after noting only limited improvement during subsequent examinations on December 13, 21, and January 3.

On January 4, Hanson returned to Dr. McGivney's office. Dr. McGivney reaffirmed the medical restrictions he had previously suggested. The next day, Dr. Roggenkamp, after conferring with Dr. McGivney, agreed to reduce Hanson's restrictions such that she was now only restricted from lifting anything heavier than twenty pounds.

Hanson's temporary position in "the cage" ended, and on January 19, she was transferred to a sub-assembly group responsible for putting bolts in washers and screws inside of caps. The parties dispute whether this new position was temporary. Sometime after January 24, Hanson returned to the 980-tractor assembly line in a different and less demanding position than which she was initially hired. Again, the parties dispute whether this position was temporary. In the meantime, Hanson continued periodic treatment with Dr. Roggenkamp, but the only substantive change during those visits was Dr. Roggenkamp's decision to restrict Hanson from working more than forty hours per week.

At a February 7 appointment, Dr. Roggenkamp noted Hanson's improved condition, but he was troubled by her inability to fully tip her head forward

and backward. Dr. Roggenkamp's observations were similar to those recently made by Dr. McGivney. Because Hanson had now been symptomatic for four months, Dr. Roggenkamp believed that she would be unable to return to regular assembly work. Dr. Roggenkamp then advised Hanson that she could no longer receive physical-therapy treatment at Caterpillar because her condition was no longer considered work-related. Instead, Dr. Roggenkamp recommended Hanson consult Rezin Orthopedics for further treatment. Later that day, Dr. Roggenkamp sent an email to plant management, stating that Hanson's progress had plateaued and that her medical restrictions would continue indefinitely. After considering Dr. Roggenkamp's email, Labor Relations Representative Douglas Howell terminated Hanson's employment on February 10, 2005. Howell concluded that Hanson was unable to perform the assembly position for which she was hired within her medical restrictions, and similarly, there were no permanent positions available within her restrictions. The company left open the possibility for Hanson's return if a suitable position became available.

On February 23, Dr. Kevin Draxinger of Rezin Orthopedics examined Hanson. Although Dr. Draxinger believed that Hanson risked a herniated disk and other associated pain if she continued working, he otherwise believed that she could return to work without restriction. Even after learning of Dr. Draxinger's conclusion at a March 9 appointment, Dr. Roggenkamp noted her continued limitation in bending her neck forward. Dr. Roggenkamp then extended Hanson's medical re-

strictions indefinitely. On April 20, Hanson sought yet another opinion. Dr. Alexander Ghanayem examined Hanson and determined that she was fit to resume working.

After obtaining an Equal Employment Opportunity Commission right-to-sue letter, Hanson filed suit against Caterpillar on August 6, 2009, alleging that the company unlawfully terminated her in violation of the ADA. Following discovery, the district court granted summary judgment for Caterpillar, reasoning that Hanson was not a "qualified individual with a disability." Hanson filed this timely appeal.

## II. ANALYSIS

We review grants of summary judgment *de novo*, viewing the record in the light most favorable to Hanson and drawing all reasonable inferences in her favor. *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We must affirm a grant of summary judgment if Hanson cannot establish an element of her ADA claim on which she would bear the burden of proof at trial. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

The ADA is designed, in part, to combat employment discrimination against individuals with disabilities. To

that end, the Act prohibits discrimination against a "qualified individual with a disability." 42 U.S.C. § 12112(a).[2] The Act defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* § 12102(2) (as amended § 12102(1)). On appeal, Hanson alleges only that Caterpillar regarded her as having a physical impairment that limits her in the major life activity of working. *See Peters v. City of Mauston*, 311 F.3d 835, 843 (7th Cir. 2002) (finding that working constitutes such a major life activity).

To satisfy the "regarded as" prong, Hanson must offer evidence that Caterpillar believed, rightly or wrongly, that her impairment substantially limited her ability to work. 29 C.F.R. § 1630.2(l); *Powers v. USF Holland, Inc.*, 667 F.3d 815, 823 (7th Cir. 2011). Notably, Hanson's evidence must also show that Caterpillar subjectively "regarded [her] as limited in [her] ability to perform not merely one particular job but a class or broad range of jobs." *Miller v. Ill. Dep't of Transp.*, 643 F.3d 190, 195 (7th Cir. 2011); *see also Kupstas v. City of Greenwood*, 398 F.3d 609, 613 (7th Cir. 2005) ("The impairments must substantially limit employment generally, not merely

---

[2] The ADA was amended effective January 1, 2009. Because Caterpillar's alleged ADA violations predate these amendments, the pre-amendment version of the ADA governs. *See Fredricksen v. UPS, Co.*, 581 F.3d 516, 521 n.1 (7th Cir. 2009).

preclude an employee from performing either a particular specialized job or a narrow range of jobs." (quotation marks and citation omitted)). Here, it is undisputed that Caterpillar subjectively believed Hanson had a serious neck condition. Thus, the sole issue for our review is whether Caterpillar subjectively regarded her neck injury as preventing her from performing a broad range of jobs.

Hanson relies heavily on our decision in *Miller*. There, the plaintiff was a bridge-crew employee who had a long-standing fear of heights—acrophobia—which his coworkers usually accommodated. 643 F.3d at 192-93. That is, Miller would often seek out tasks he could perform from the ground. If he was assigned a task that triggered his acrophobia, a coworker was usually willing to trade tasks. *Id.* at 193. This informal arrangement lasted about four years, until his employer compelled him to perform a task that triggered his condition. *Id.* Miller suffered a panic attack related to this incident, and he was fired not long thereafter. *Id.* at 193-94. We reversed the district court's grant of summary judgment for the defendant, in part by finding that his employer regarded Miller's acrophobia as limiting his ability to perform a wide variety of jobs—including those jobs that he had successfully performed in the past. *Id.* at 197.

The facts here are markedly different than those presented in *Miller*. Unlike the Illinois Department of Transportation, Caterpillar willingly placed Hanson in three temporary positions within her prescribed medical re-

strictions: she spent time working in "the cage," on a sub-assembly line, and even back on the 980-tractor line. Meanwhile, Miller was terminated even though he appeared capable of performing any number of tasks that did not implicate his acrophobia. Caterpillar's willingness to place Hanson in other jobs within her medical restrictions clearly belies the claim that the company subjectively regarded her as unable to perform a broad class of jobs. It also makes Hanson's analogy to *Miller* unavailing.

Hanson also points to a handful of evidence suggesting that Caterpillar violated the "regarded as" prong. First, Hanson argues that Dr. Roggenkamp's medical restrictions were so severe as to prevent her from doing almost any job, including computer work. Dr. Roggenkamp also supposedly told Hanson that her medical restrictions would continue indefinitely and that she would not be able to perform *any* job. This evidence is not as helpful as Hanson hopes. Even if Dr. Roggenkamp were the individual that fired her—he did not, Howell fired her—Dr. Roggenkamp's hyperbole about Hanson's capabilities was proven untrue when Caterpillar placed her in three different positions. The company and relevant decision makers believed that Hanson could perform a wide variety of jobs that did not interfere with her condition, including clerical work and light-duty manual labor. In contrast, Hanson was only prevented from performing a narrow range of jobs that required demanding physical labor. Dr. Roggenkamp's role in this litigation

only proves that Caterpillar believed Hanson was impaired, not that she was so impaired as to be unable to perform a variety of jobs.

The second piece of evidence Hanson marshals before us is a statement made by Floyd Braddy, an Environmental Health and Safety Associate at Caterpillar, uttered more than one month after Hanson was fired. Because Hanson was eligible for rehire, Braddy considered her for a position operating a parflange machine. Braddy ultimately determined that Hanson's medical restrictions precluded her from operating the machine, but he also said that "with [Hanson's] assigned medical restrictions I would be hard pressed to find her capable of doing about any job in the shop." Hanson claims that this is evidence that Caterpillar regarded her as unfit to perform a broad class of jobs. We disagree. First, the district court below was rightly skeptical of the claim that Braddy's post-termination statement somehow illuminates Caterpillar's subjective beliefs at the time of her termination. *See, e.g., Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 96 F. Supp. 2d 763, 772 (N.D. Ill. 2000). More than that, Braddy's statement is wholly outside of the complaint—Hanson alleged that she was fired for being regarded as disabled, not that she was discriminated against in any decision to rehire her. Finally, Braddy's comment unconvincingly contradicts the undisputed evidence that Caterpillar placed Hanson in a variety of positions within her medical restrictions, including a "shop" position on the 980-tractor line.

Ultimately, Hanson cannot overcome the evidence showing that Caterpillar placed her in three different positions, all within her medical restrictions. Because Caterpillar did not regard her as impaired as to a broad range of jobs, we find that Hanson was not a "qualified individual with a disability."

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Caterpillar.