In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 21-3234 & 21-3308

PETER SMYKLA, *et al.*,

*Plaintiffs-Appellants, Cross-Appellees,*

*v.*

ALEX MOLINAROLI, *et al.*,

*Defendants-Appellees, Cross-Appellants.*

———————————

Appeals from the United States District Court for the
Eastern District of Wisconsin.
No. 2:16-cv-01093-PP — **Pamela Pepper**, *Chief Judge.*

———————————

ARGUED SEPTEMBER 19, 2022 — DECIDED NOVEMBER 6, 2023

———————————

Before WOOD, SCUDDER, and JACKSON-AKIWUMI, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* This securities appeal asks us to decide whether a proxy statement disclosing the terms of a merger contained materially misleading statements and omissions that altered the total mix of information available to shareholders. The district court dismissed all claims, finding that the proxy statement provided shareholders with ample information. We affirm.

**I**

In January 2016, Johnson Controls, Inc. ("Johnson"), a Wisconsin company, entered into an agreement to merge with Tyco International plc, an Irish company. The combined entity, Johnson Controls International plc ("Johnson International"), is domiciled in Ireland. The terms of the merger were disclosed to shareholders in a joint proxy statement/prospectus filed by Tyco with the Securities and Exchange Commission as part of a Form S-4 registration statement in April 2016. Tyco refiled a final version of the prospectus in July 2016.

Johnson retained two financial advisors in connection with the merger. The financial advisors analyzed whether the deal was overall "fair" to Johnson shareholders and issued opinions that included a description of the assumptions they made, procedures they followed, and matters they considered, as well as the limitations of their opinions. The financial advisors' opinions were disclosed in the proxy statement. Although the advisors concluded that the merger was overall "fair," the proxy statement made clear that the market price of the shares would fluctuate, and Johnson shareholders could not be sure of the value of consideration they would receive in the merger.

The proxy statement disclosed that each share of Johnson's common stock would be, at the election of the shareholder, either converted into an ordinary share of Johnson International, or cashed out for $34.88 per share. However, Johnson shareholders were expected to own approximately 56% of Johnson International, meaning Johnson shareholders

would have reduced ownership of Johnson International.[1]
The proxy statement disclosed that both the conversion and
cash out of shares would be treated as taxable transactions for
Johnson shareholders. It encouraged the shareholders to con-
sult their own tax advisors regarding the tax consequences of
the merger.

Shareholders were also informed that Johnson's directors
and executive officers had interests in the merger that were
different from, or in addition to, interests of shareholders.

The transaction was structured as a "reverse merger":
Johnson merged with an indirect wholly owned Wisconsin
subsidiary of Tyco, Jagara Merger Sub LLC. The 56% equity
expectation for Johnson shareholders was calculated to pre-
vent triggering Sections 7874 and 4985 of the U.S. Internal
Revenue Code. Section 7874 provides, in relevant part, that
when a domestic corporation is acquired by a foreign entity,
but its former shareholders retain at least 60% of the stock, the
expatriated entity must pay "inversion gain" taxes. *See* 26
U.S.C. § 7874(a) ("The taxable income of an expatriated entity
. . . shall in no event be less than the inversion gain of the en-
tity for the taxable year."). Section 4985 imposes taxes on cer-
tain stock compensation held by an expatriated company's in-
siders, such as directors and executive officers. *See* 26 U.S.C. §
4985.

Johnson hoped to gain corporate tax benefits, or "tax syn-
ergies," by using the "reverse merger" structure to move its
legal domicile to Ireland. The proxy statement thus explained
that because Johnson shareholders were expected to own less

---

[1] In the end, Johnson redeemed 17% of its shares to reduce its share-
holders' ownership of Johnson International.

than 60% of the combined entity, it likely would not be subject to "adverse" U.S. federal income tax rules. However, in April 2016, the U.S. Department of the Treasury announced proposed regulations that affected how Johnson's equity would be calculated, eliminating the U.S. tax benefits of the "reverse merger." In response to this new development, the proxy statement warned shareholders that if the proposed regulations were finalized, the U.S. tax benefits of the deal would not be realized. Nevertheless, Johnson's directors still recommended in the proxy statement that shareholders vote in favor of the merger because the company could realize other, "global tax synergies" and "operational synergies."

Finally, the proxy statement disclosed that a previously planned spinoff of Johnson's automotive business, Adient, would be delayed until after the merger was completed. Each shareholder of Johnson International would receive a pro rata interest in Adient. The proxy statement referenced the Form 10 Information Statement that Adient filed with the SEC. That filing, in turn, explained that the spin-off would proceed after the merger and that distribution of Adient shares would be taxable for U.S. federal income tax purposes.

On August 17, 2016, Johnson shareholders voted overwhelmingly in favor of the merger. Johnson and Tyco finalized the merger on September 2, 2016.

One day before the shareholder vote, Plaintiffs brought this putative class action against Johnson, Jagara, Tyco, and Johnson's senior executive officers and members of the board of directors. After Johnson's shareholders voted to approve the merger, plaintiffs unsuccessfully sought to enjoin the company from "continuing to act in a manner that would force" them to pay capital gains taxes. The district court

refused to issue an injunction because plaintiffs did not demonstrate that they would suffer irreparable harm.

Plaintiffs then filed an amended complaint asserting federal and state law claims and alleging that defendants breached their fiduciary duties and wrongfully structured the merger to be taxable for Johnson's former shareholders without providing sufficient federally required securities disclosures. Specifically, as pertinent to this appeal, plaintiffs alleged that defendants violated Section 14(a) of the Securities Exchange Act of 1934.

The district court dismissed all claims. *See Gumm v. Molinaroli*, 569 F. Supp. 3d 806 (E.D. Wis. 2021). The court found that the amended complaint did not meet the heightened pleading standard imposed by the Private Securities Litigation Act (PSLRA) because plaintiffs failed to explain why any of the omissions they pointed to made the included statements misleading. The district court also found that dismissal without leave to amend was appropriate because amendment would be futile considering plaintiffs' failure to plausibly allege that any statements or omissions were misleading. The district court therefore dismissed plaintiffs' federal claims with prejudice and in its discretion chose not to retain supplemental jurisdiction over the state law claims. Plaintiffs appeal from that judgment.

## II

On appeal, plaintiffs argue that the district court erred because the amended complaint sufficiently alleged that the proxy statement contained materially misleading statements and omissions. Plaintiffs' issues with the proxy statement can be distilled to the following: defendants had undisclosed

motives and conflicts of interest to structure the merger in a manner that was beneficial to them, at the expense of shareholders; defendants could have structured the merger to be tax-free for shareholders, but did not disclose the option of this alternative structure; the consideration received by shareholders was too low because Johnson shares were undervalued; and directors' statements that the merger was "fair" and in the "best interests" of shareholders were deceptive and incorrect.

We review the district court's decision granting a motion to dismiss for failure to state a claim under Rule 12(b)(6) de novo, accepting plaintiffs' well-pleaded factual allegations as true and drawing all reasonable inferences in their favor. *Kuebler v. Vectren Corp.*, 13 F.4th 631, 634–35 (7th Cir. 2021). We "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (relying on "publicly available documents" at the motion for judgment on the pleadings stage).

## III

We begin by addressing the pleading standard plaintiffs were required to meet in this case. In a securities action, plaintiffs must not only comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure, which provides that a pleading must make a "short and plain statement" of the claim, but also the PSLRA. Congress enacted the PSLRA "[a]s a check against

abusive litigation by private parties." *Tellabs, Inc.*, 551 U.S. at 313. "Exacting pleading requirements are among the control measures Congress included in the PSLRA." *Id.* The heightened pleading instructions require plaintiffs to "identify each statement [or omission] alleged to have been misleading, the reason why [it] was misleading, and all relevant facts supporting that conclusion." *Kuebler*, 13 F.4th at 638; *see* 15 U.S.C. § 78u-4(b)(1)(B).

As the district court aptly observed, the amended complaint—at 195 pages long—is neither short nor plain; it contains long block quotes from the proxy statement but does not explain why those block quotes (and defendants' alleged omissions) are misleading, leaving the reader to puzzle over the allegations in an attempt to piece them together. The district court rightly found that such a pleading does not meet the PSLRA standard. Plaintiffs argue that the length of the amended complaint reflects the heightened PSLRA pleading requirements, and that in the end, the district court was able to determine their allegations. We recognize that the PSLRA can make it difficult for plaintiffs to assert their claims using a "short and plain" statement. The district court too recognized this, concluding that while "a more compact, concise and differently-organized complaint" would be preferable, that alone is not a reason to dismiss a complaint with prejudice. *Gumm*, 569 F. Supp. 3d at 834. The issue with the amended complaint is not simply that it is long, but that it paid little regard to the fundamental PSLRA requirement: an allegation of every misleading statement or omission must be accompanied by an explanation about why it is misleading. The district court's careful attempt to discern the allegations in the amended complaint does not excuse plaintiffs' failure to comply with the PSLRA.

We next turn to whether the district court erred when it dismissed the amended complaint without leave to amend, which requires us to consider the merits of plaintiffs' allegations. We describe the pertinent legal framework before diving into the facts of this case.

Section 14(a) of the Exchange Act makes it unlawful to solicit a proxy from shareholders in violation of SEC rules and regulations, 15 U.S.C. § 78n, and Rule 14a-9 bars proxy statements that are false and misleading with respect to a material fact or that omit material facts necessary to make the statements not false or misleading, 17 C.F.R. § 240.14a-9.[2] We have previously held that "[t]o state a claim under Section 14(a), a plaintiff must allege: (i) that the proxy statement contained a material misstatement or omission that (ii) caused the plaintiff's injury, and (iii) that the proxy solicitation was an essential link in accomplishing the transaction." *Kuebler*, 13 F.4th at 637. In our circuit, "[t]here is no required state of mind for a violation of section 14(a); a proxy solicitation that contains a misleading misrepresentation or omission violates the section even if the issuer believed in perfect good faith that there was nothing misleading in the proxy materials." *Beck v. Dobrowski*, 559 F.3d 680, 682 (7th Cir. 2009).

---

[2] Plaintiffs also assert a Rule 14a-101 violation against Johnson and the individual defendants. Item 11(d) provides: "If the securities are to be issued otherwise than in a public offering for cash, state the reasons for the proposed authorization or issuance and the general effect thereof upon the rights of existing security holders." 17 C.F.R. § 240.14a-101. As defendants correctly point out, that rule is inapplicable here because Item 11(d) requires a "registrant" issuing securities to furnish certain information—here, Tyco—not Johnson or the individual defendants.

To determine whether an omitted fact is material, we ask whether "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). "Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* "The investor must identify particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 194 (2015). As the Supreme Court has explained, "[t]hat is no small task for an investor." *Id.*

While materiality is normally a question of fact reserved for the trier of fact, *TSC Industries, Inc.*, 426 U.S. at 450, we can resolve materiality as a matter of law when the information at issue is so obviously unimportant that reasonable minds could not differ, *Kuebler*, 13 F.4th at 638. We "look at all available information in determining the materiality of a challenged omission or misstatement." *Kuebler*, 13 F.4th at 639.

The crux of plaintiffs' argument in this litigation is that "there was another way to structure the merger that would have potentially avoided" the taxation of Johnson shareholders and that "the omissions regarding such an option were material." Assuming there was, in fact, an alternative way to structure the merger, we take plaintiffs' point that shareholders may have preferred a different deal than the one they got.

But there is nothing in the Exchange Act that entitles investors to receive a list of alternative deal options that may provide a better return on their investment. Indeed, the Supreme Court has been "careful not to set too low a standard of materiality, for fear that management would bury the shareholders in an avalanche of trivial information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (discussing Section 10(b) and Rule 10b–5(b) claims, which, like Section 14(a), require an inquiry into the materiality of an omitted fact and the "total mix" of information available to investors) (cleaned).[3] Our inquiry, as described above, is limited to whether the proxy statement contained materially misleading statements or omissions regarding the deal that was before the shareholders.

Plaintiffs' belief that failure to discuss alternative merger structures is a material omission does not square with the requirements imposed by the Exchange Act. Were we to adopt plaintiffs' position, we would be creating a new rule requiring proxy statements to include a laundry list of potential merger options and disclose the potential benefits and drawbacks of each option. That is not what Congress intended with the Exchange Act. We recognized as much in *Kuebler*, when we held that "Section 14(a) is not a license for shareholders to acquire all the information needed to act as a sort of super-appraiser: appraising the appraiser's appraisal after the fact." 13 F.4th at

---

[3] In *Basic, Inc. v. Levinson*, 485 U.S. 224, 231 (1988), "the Supreme Court adopted the materiality standard developed under § 14(a) of the Exchange Act of 1934, 15 U.S.C. § 78n(a) and Rule 14a–9, 17 C.F.R. § 240.14a–9, for use when analyzing the materiality of contingent or speculative events under § 10(b) and Rule 10b–5." *S.E.C. v. Maio*, 51 F.3d 623, 637 n.17 (7th Cir. 1995).

643–44 (collecting cases). And the inclusion of such information would create unnecessary noise and confusion in the proxy statement. *Cf. TSC Indus., Inc.*, 426 U.S. at 448 ("Some information is of such dubious significance that insistence on its disclosure may accomplish more harm than good."); *Matrixx Initiatives*, 563 U.S. at 38 (expressing concern about overwhelming shareholders with "an avalanche of trivial information.").

Even assuming defendants knew about a non-taxable merger alternative and considered it a competing fact, defendants were not required to disclose it. Nor were the directors required to disclose that they structured the merger, as plaintiffs allege, for their own benefit and at the expense of shareholders, in a way that suggests the merger was not "fair" to and in the "best interests" of the shareholders. It is well-established that management's "true purpose" or motive for taking a course of action is not material under federal securities laws, even if that motive constitutes a fiduciary breach under state law. *Kademian v. Ladish Co.*, 792 F.2d 614, 623–24 (7th Cir. 1986). That is because under Section 14(a), shareholders cannot recover for a breach of fiduciary duty; "neither can [they] 'bootstrap' such a claim into a federal securities action by alleging that the disclosure philosophy of the statute obligates defendants to reveal either the culpability of their activities, or their impure motives for entering the allegedly improper transaction." *Panter v. Marshall Field & Co.*, 646 F.2d 271, 288 (7th Cir. 1981) (collecting cases). Thus, a statement by directors that a transaction is "fair" and in the "best interests" of shareholders is not actionable, even if the directors personally disbelieve it, when there is no objective evidence "that the statement also expressly or impliedly asserted something

false or misleading about its subject matter." *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095–96 (1991).

There is an important caveat to the rule that the "fairness" of a corporate transaction is not actionable under federal law: "a proxy statement's claim of fairness presupposes a factual integrity that federal law *is* expressly concerned to preserve." *Virginia Bankshares*, 501 U.S. at 1093 n.6 (emphasis added). There are two Supreme Court cases that guide our analysis on this issue: *Virginia Bankshares* and *Omnicare*. We pause here to consider these cases before returning to plaintiffs' arguments.

In *Virginia Bankshares*, defendants solicited approval of a merger from minority shareholders. The proxy statement valued the minority stock at $42 and provided that the merger was an "opportunity for the minority shareholders to achieve a 'high' value, which [the directors] elsewhere described as a 'fair' price, for their stock." *Id.* at 1088. A minority shareholder sued, alleging that "the directors had not believed that the price offered was high or that the terms of the merger were fair, but had recommended the merger only because they believed they had no alternative if they wished to remain on the board." *Id.* at 1088–89. The Supreme Court held that "disbelief or undisclosed motivation, standing alone, [is] insufficient to satisfy the element of fact that must be established under § 14(a)." *Id.* at 1096. The minority shareholder was additionally required to provide "objective evidence . . . that the statement also expressly or impliedly asserted something false or misleading about its subject matter."[4] *Id.* at 1095–96.

---

[4] Plaintiffs insist that in *Virginia Bankshares*, the Supreme Court "held that disclosures made misleading by omitting 'self-accusatory' information are actionable under §14(a)." But the Court did not say that.

The Supreme Court again considered the actionability of misleading opinions in *Omnicare* and held that an omission can make an opinion statement misleading "if a registration statement omits material facts about the issuer's inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement itself." 575 U.S. at 189. However, an opinion statement "is not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way." *Id.* That is because "[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts." *Id.* at 189–90. Moreover, "an investor reads each statement within [a proxy statement], whether of fact or of opinion, in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information." *Id.* at 190. Thus, "to avoid exposure for omissions . . . an issuer need only divulge an opinion's basis, or else make clear the real tentativeness of its belief." *Id.* at 195. An opinion therefore is not necessarily misleading when an issuer knows some undisclosed fact cutting the other way. *Id.*

After *Virginia Bankshares* and *Omnicare*, a defendant's subjective disbelief or hidden motivation in a stated opinion is not enough to create liability. The defendant must also misrepresent, affirmatively or by omission, either: (1) the underlying facts used to form the opinion; or (2) the scope of inquiry made prior to rendering the opinion. Plaintiffs argue that the

Rather, the Court explained that it would not decide whether directors were obligated to state their reasons for supporting a merger. 501 U.S. at 1098 n.7. If directors make a statement, they have a duty to refrain from misleading in that statement. That duty, however, does not create a general duty of self-accusation. *Id.*

merger undervalued the price of their shares and was not "fair" to and in the "best interests" of shareholders, and that the directors knew this but did not include it in the prospectus because they had undisclosed motivations (the "tax avoidance scheme" for personal benefit). But the proxy statement not only disclosed the terms of the merger in detail, it also disclosed the facts used to form directors' opinions and the scope of inquiry they conducted.

The proxy statement explained that Johnson hired two outside financial advisors who reviewed the merger agreement and deemed the aggregate consideration fair to Johnson shareholders. It disclosed the analysis of these advisors, including value estimates for Johnson stock.[5] It also disclosed that shares would be redeemed at $34.88, and that financial advisors had compared this cash value against both the range of estimated values and the stock's recent closing price of $35.60 before rendering a fairness opinion. If the advisors had advised Johnson's directors that the $34.88 price was unfairly low, or if the directors did not ask the advisors to consider the fairness of the consideration shareholders were receiving, that

---

[5] Plaintiffs calculate that the one-to-one exchange ratio of shares created an implied value of $34.88 per share—the same value as the cash price. But we cannot put a firm number on the value of the stock consideration. As the proxy statement warned, the exact value of the merged company's stock could not be predicted because each company's stock would inevitably fluctuate before the merger. Thus, even if a one-to-one ratio reflected a value of $34.88 per share at some point prior to the merger, the final value when shares were actually exchanged was likely different. In any event, financial advisors explained that they assessed the trading history and historical value of both companies before deciding whether the share-exchange rate was fair to Johnson shareholders. And they concluded that the merger was overall fair.

would be a material fact a reasonable shareholder would want to know. *See Omnicare*, 575 U.S. at 188–89. But that did not happen here.

The proxy statement further explained that although shareholders could elect whether to accept cash or new company stock in exchange for their Johnson stock, elections would be prorated so that approximately $3.864 billion worth of stock would be cashed out (*i.e.* about 17%). Regarding the 83% of Johnson shares that would be exchanged for new stock, the proxy statement explicitly stated that the goal was for Johnson shareholders to own approximately 56% of the new company after the merger and that this would be done to achieve "tax synergies."

Recognizing that the proxy statement contained all required disclosures, plaintiffs attempt to save their claims by arguing that the disclosures were not emphasized enough while the recommendation that the merger was "fair" to shareholders was front and center. But plaintiffs cannot state a claim by merely alleging that defendants should have given more emphasis to certain facts. *Panter*, 646 F.2d at 289.

In deciding whether plaintiffs' federal claims survive, we are instructed by the Supreme Court to ask if "reasonable minds cannot differ on the question of materiality." *See TSC Industries, Inc.*, 426 U.S. at 450. In view of all the disclosures provided in this case, we hold that plaintiffs have not alleged materially misleading statements and omissions: reasonable minds cannot differ on this conclusion. We therefore find no error in the district court's dismissal of plaintiffs' federal

claims with prejudice for failure to state a claim.[6] Having dismissed the federal claims, the district court acted well within its discretion in relinquishing jurisdiction over the state law claims. *Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.").

The only remaining issue for us to decide is whether to grant defendants' request for sanctions under Rule 11(b). The PSLRA provides that "upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party . . . with each requirement" of Rule 11 and, if a violation is found, "the court shall impose sanctions." 15 U.S.C. § 78u–4(c)(1), (2); *City of Livonia Emps.' Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co.*, 711 F.3d 754, 761 (7th Cir. 2013). While plaintiffs' claims fail under the PSLRA standard, we see nothing in the record that warrants sanctions or further investigation. *See Feldman v. Olin Corp.*, 692 F.3d 748, 758 (7th Cir. 2012) (sanctions appropriate only if "no legal basis or evidentiary support" for position).

**IV**

Although plaintiffs allege that they are not challenging the business and financial merits of the merger, their arguments boil down to a demand for a better deal than the one they

---

[6] We do not reach the loss causation issue because we conclude that plaintiffs failed to allege any materially misleading statements or omissions.

received. The Exchange Act aims to ensure transparency; it contains no promise of more lucrative deals for shareholders.

AFFIRMED.