In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 22-2944

LAURA MULLEN, individually and on behalf of all others
similarly situated,

*Plaintiff-Appellee,*

*v.*

RICKY BUTLER, *et al.,*

*Defendants-Appellants.*

———————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 18-cv-1465 — **Matthew F. Kennelly**, *Judge.*

———————————

ARGUED OCTOBER 26, 2023 — DECIDED FEBRUARY 5, 2024

———————————

Before FLAUM, BRENNAN, and KIRSCH, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Laura Mullen's daughters played
for a youth volleyball club. She filed a class action suit against
the club, GLV, Inc., and its owners, Ricky and Cheryl Butler
(collectively "the Butlers"). Mullen claimed the Butlers fraud-
ulently concealed previous claims of sexual abuse. The dis-
trict court granted summary judgment to the Butlers. The

court also imposed Federal Rule of Civil Procedure 11 sanctions against the Butlers and their lawyer, but it declined to sanction Mullen.

The club and its owners appeal the sanctions. Because the district court provided factual and legal support for its decisions, we conclude that court did not abuse its discretion or commit clear error. So, we affirm.

## I. Background

### A. The Underlying Dispute

In 1995, the Illinois Department of Children and Family Services ("DCFS") and USA Volleyball, a governing body, both found that Ricky Butler "had sexual intercourse with at least three underage girls he was training" in the 1980s. In 2018, USA Volleyball completed its investigation of the allegations and banned Ricky Butler from participating in the sport for life. Ricky Butler has admitted that he had sexual relationships with some of his accusers, but he denies that the women were underage and denies the allegations of rape and abuse. A month after USA Volleyball entered its ban, Laura Mullen filed a class action suit against the Butlers.

Between 2012 and 2017, Laura Mullen's two daughters participated in volleyball programs through GLV Inc. In 2018, Mullen alleged the Butlers fraudulently concealed claims of sexual abuse made against Ricky Butler. Mullen claimed that had she and members of a class known about those allegations, they would not have participated in any GLV-associated volleyball programs. The district court granted the Butlers summary judgment on all claims against Mullen. The court found that there was sufficient publicly available information about Ricky's past behavior. So, Mullen could not

justifiably rely on the Butlers' concealment of information, and she had not been deceived or injured.

The merits of this case have been adjudicated. This appeal is limited to the district court's two sanctions decisions.

**B. Improper Activity Alleged During the Class Notice Period**

Mullen moved for sanctions against the Butlers and their attorney, Danielle D'Ambrose, for improperly interfering with the class notice process under Federal Rule of Civil Procedure 23(d). To support her motion, Mullen pointed to the Butlers' numerous communications with potential class members and D'Ambrose's statements to the district court during two status hearings. The Butlers later filed their own motion for sanctions against Mullen.

*1. Approval of Class Notice and Initial Communications*

The court approved a class notice in February 2019. The notice included a brief description of the case, informed class members about their options to either stay in the suit or opt out of the class, and it explained the legal implications of those options. It also advised class members that they could opt out only via mail by April 19, 2019. Neither party's members nor attorneys could communicate with putative class members. *See* FED. R. CIV. P. 23 and ABA MODEL RULE OF PROFESSIONAL CONDUCT 4.2.

The class administrator published the URL address of the class website and distributed class notices via email on March 19, 2019. That same day, Cheryl Butler emailed GLV's employees alerting them that GLV was "starting to get phone calls" about the class action. In the email, she instructed that "[o]pt

out is crucial!" and included an excerpt of the opt-out details from the class notice. Over the course of the following week, the Butlers communicated with potential class members at least ten times.

On March 20, 2019, Troy Gilb, GLV's Vice President of Operations (and one of the recipients of Cheryl's email), sent a mass email to class members describing the suit and implications of opting out. Gilb told the recipients it was "important that you understand you are now a part of the lawsuit as a member of the class." He explained, "you can choose [to] do nothing and you will remain as a member of the class and a plaintiff in the lawsuit against Sports Performance/GLV Inc. and Rick & Cheryl Butler." Further, "[i]f you choose not to be part of the lawsuit …, you must send a letter to the class administrator before April 19th, 2019."

Several class members replied to Gilb's email. One stated he had already opted out, to which Gilb responded: "Thank you very much for the show of support!! We all know what is going on with the lawsuit and I hope that with enough voices of support that this whole thing will be thrown out! We are doing all we can to fight this and we have great defense council [sic] on our side!" Gilb forwarded his mass email to class members and his communications with this specific class member to D'Ambrose as part of a longer email string.

One recipient of the class administrator's notice emailed Gilb to ask about the lawsuit and whether it would affect the club the following year. He responded, "Yes, I am aware of the lawsuit. For next year our plan is to continue doing what we are doing." He added, "If there is a groundswell of parents that opt out of the lawsuit, which I think will happen, then it most likely will get dismissed. If you have any questions

please let me know." In response to another member's email, Gilb replied: "Everyone knows what this lawsuit is about and … there are a lot of parents opting out. I hope that … all the opt outs will have a positive impact on the judge."

Meanwhile, Cheryl Butler was also communicating with class members about the suit. In response to a text message asking about opting out, Cheryl directed the class member to a Facebook page, "Parents against the Sports Performance Class Action Lawsuit." There, class members could find a printable letter "to make [opting out] easy." Cheryl also emailed one class member expressing her displeasure about the requirement that class members submit opt-outs by mail rather than email. Replying to another class member's inquiry about the suit, Cheryl wrote: "[S]everal alumni and current parents are trying to help us in anyway [sic] possible in re-gards [sic] to this." In addition, Cheryl sent texts and emails thanking class members who expressed their intentions to opt out but who had not yet done so.

Ricky Butler also communicated with class members dur-ing this time. After the class notice was issued, some class members began emailing others to encourage them to opt out. A class member forwarded one email to Cheryl and Ricky Butler, seeking their opinion of the email's author and whether they recommended acting on the advice to opt out. To this, Ricky Butler responded that the email's author "[i]s a great friend!"

### 2. The First Status Hearing and Further Communica-tions

On March 27, 2019, Mullen and class counsel notified the district court that they suspected the Butlers were improperly

communicating with class members and encouraging them to
opt out. The court held a status hearing and asked D'Ambrose
whether the Butlers were communicating with class members
"in a way other than the only way that it's appropriate to do
that, which is through the notice." D'Ambrose responded
with an unequivocal denial:

> Ever since we became involved in the case, I
> have not seen one bit—they are—[the defend-
> ants] are very careful about talking about any-
> thing. They received e-mails from class mem-
> bers regarding the opt-outs, regarding their
> opinions on the lawsuit, and every e-mail I've
> seen them respond with is, I'm very sorry, I
> can't talk about this right now, you know, thank
> you, something along those lines.

Despite this response, the Butlers and D'Ambrose contin-
ued to communicate with class members about the suit. For
example, GLV's office administrator emailed two class mem-
bers with instructions for opting out of the class. Cheryl Butler
responded to a class member's inquiry about opting out, stat-
ing, "If you opt out then you would not be suing Rick, myself
and Sports Performance." And, after receiving what appears
to be a forwarded April 11 email conversation, D'Ambrose di-
rectly contacted a class member involved in the exchange.

### 3. The Second Status Hearing and a Concession

Before the next status hearing, Mullen submitted copies of
several of the Butlers' email and text exchanges described
above, including the mass email Gilb forwarded to D'Am-
brose on March 21, 2019. At the hearing, the district court re-
minded D'Ambrose of her statement at the first status

hearing—that the Mullens had received emails from class members about the lawsuit and that the Butlers had not discussed the suit with them.

The district court asked D'Ambrose if she wanted to correct that statement. D'Ambrose then acknowledged her receipt of a copy of Gilb's mass email to class members, and she conceded the email was an inappropriate communication. D'Ambrose explained her contrary statement at the first hearing by asserting that she had received Gilb's mass email as part of an email conversation with more than one message and that she "did not see" his improper message.

Mullen moved for sanctions against the Butlers and D'Ambrose for improperly interfering with the class notice process. The Butlers later moved for sanctions against Mullen.

**C. Sanctions Imposed against the Butlers and Their Attorney**

In its March 13, 2020 opinion and order, the district court gave reasons for and imposed monetary sanctions against the Butlers as well as non-monetary sanctions against D'Ambrose.

*1. Monetary Sanctions against the Butlers*

The court concluded that the Butlers' communications with class members during the notice period were potentially coercive and therefore undermined the process set forth in Rule 23. Finding that the Butlers intentionally interfered with the class notice and opt-out process, the court granted Mullen's motion for sanctions. Mullen was "entitled to recover from the defendants their reasonable attorney's fees and expenses," the court ruled. In addition, "because the defendants conducted a campaign to interfere with the processes of the

Court," GLV, Inc., Ricky Butler, and Cheryl Butler were each "assessed a civil sanction of $5,000, payable to the Clerk, as a penalty for their misconduct."

Much later, after reviewing the parties' joint October 12, 2022 status report concerning reasonable time reductions and appropriate hourly rates for Mullen's attorneys, the court awarded final attorneys' fees and costs "in favor of plaintiff and against defendants GLV, Inc., Ricky Butler, and Cheryl Butler in the total amount of $20,998.10."

### 2. Non-Monetary Sanctions against D'Ambrose

The district court ruled that D'Ambrose's April 11, 2019 email to a class member violated Model Rule 4.2, which prohibits attorneys from directly contacting parties they know are represented by counsel. The court also found that D'Ambrose's statement to the court at the first status hearing violated Model Rule 3.3, which prohibits attorneys from knowingly making false statements to the court. "D'Ambrose's characterization of the defendants' statements to class members contained a significant falsehood," the court stated. It further found that "D'Ambrose took deliberate action to avoid confirming a high probability of wrongdoing" which "amounts to willful blindness" that was "quite serious" and "prejudiced the class." Under this reasoning and "due to D'Ambrose's relative lack of practice experience," the district court imposed a non-monetary sanction. The court "reprimand[ed] D'Ambrose for her false statement to the Court" and directed her to complete twice the required amount of professional responsibility hours for her next continuing legal education cycle imposed by the state bar.

**D. Sanctions Denied against Mullen**

In June 2020, the Butlers moved for imposition of sanctions against Mullen and her attorneys under Rule 11, 28 U.S.C. § 1927, and the court's inherent power. The district court condensed the Butlers' assertions in their 49-page motion into several categories in support of their request:

First, per the district court, the Butlers claimed that "Mullen and her counsel included all sorts of irrelevant and extraneous material in her complaint in an effort to prejudice and embarrass the defendants." The Butlers included Mullen's use of the term "rape" in this category. The district court did not agree that "inclusion of these accusations was irrelevant and extraneous to the lawsuit." It concluded that Mullen used the term "rape" in an "accurate and widely (though perhaps not universally) accepted" fashion. Therefore, "there was no violation of Rule 11 or section 1927 here and no sanctionable misconduct."

Second, according to the district court, the Butlers alleged inconsistencies between Mullen's actions before the lawsuit and the accusations in her complaint. This included "a number of false factual assertions and irrelevant allegations." One example, to the district court, was that the Butlers looked at "Mullen's enrollment of one of her daughters in a program associated with the Butlers and GLV in 2018, after the lawsuit was filed."

The district court held that although it "overruled Mullen's contention that knowing some facts about Rick's sexual misconduct was way different from knowing all the facts, the argument was a colorable one." So, "ruling against Mullen on the merits doesn't, as defendants contend[,] 'prove that

Mullen and her attorneys intended to commit a fraud upon the Court'" deserving of sanctions.

Third, the district court noted the Butlers' argument that Mullen and her counsel did not have a proper basis for suing them. The Butlers believed that Mullen wanted to "force the defendants out of business." The district court ruled that "Mullen had a facially viable lawsuit for damages." Further, the Butlers had "not shown that Mullen filed suit for an improper purpose within the meaning of Rule 11 … ." Nor had they shown that Mullen "would not have pursued the lawsuit if the goal she could achieve was winning the case and an award of damages." Thus, there "was no violation of Rule 11."

Fourth, the Butlers asserted Mullen's presentation of evidence was sanctionable. According to the district court, they believed that Mullen and her attorneys "misrepresented []material about the DCFS proceedings." The district court explained that although the DCFS proceedings were not a matter of public record, they were still relevant to the case at hand. The court held that "claims of inaccuracy are not a basis to impose sanctions upon Mullen or her attorneys." Finally, the district court had "also considered the defendants' other claims regarding allegations by Mullen that they contend were false" and it did "not find them to be a basis for imposing sanctions under any of the legal authorities the defendants cite."

After considering these and the Butlers' other contentions, the court denied their motion for sanctions in full.

## II. Discussion

District courts have broad discretion to fashion sanctions against litigants. *Greyer v. Ill. Dep't of Corr.*, 933 F.3d 871, 877

(7th Cir. 2019). Therefore, we review their factual findings for clear error and their choice of which sanctions to impose for an abuse of discretion. *Id.* "[C]aution and restraint" must be used when a district court exercises its inherent power. *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009). Appellate review of the court's choice of sanction is deferential, though. *Id.*; *see REXA, Inc. v. Chester*, 42 F.4th 652, 671 (7th Cir. 2022).

We reverse a district court's imposition of sanctions only if one or more of the following is true: "'(1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary.'" *Salmeron*, 579 F.3d at 793 (quoting *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008)); *see REXA*, 42 F.4th at 671.

### A. Monetary Sanctions against the Butlers

The Butlers willfully communicated with class members in a manner that was "potentially coercive and therefore undermined the notice process set forth in Rule 23," so the district court sanctioned them. Class actions present "'opportunities for abuse as well as problems for courts and counsel in the management of cases.'" *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 759 (7th Cir. 2000) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). A district court thus has both "'the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.'" *Id.* The district court may prohibit a party from communicating directly with class members to solicit them to opt out of the class. 2 MCLAUGHLIN

ON CLASS ACTIONS, *Status of Communications with Class Members* § 11:1 (20th ed. 2023).

On appeal, the Butlers challenge this sanctions order. Their claims include that the district court got the facts wrong, and that the monetary sanctions—both Mullen's attorneys' fees and the court's civil penalty—were too high.

### 1. Factual Findings

The Butlers argue the district court erroneously ruled that their communications with class members abused and undermined the purposes of Rule 23. They claim those communications were not misleading or coercive and that there is no evidence a class member's decision to opt out of the class was unduly influenced or based upon anything but the member's own free will. They further submit that they did not intend to interfere with class members' decisions to participate in the litigation. Rather, their communications were in response to class members who initiated contact with the Butlers and unequivocally expressed an intent to opt out of the class action. The Butlers claim it was illogical for the district court to rely on a business relationship between them and the class members to find that the communications could have been coercive.

In denying these claims, the district court pointed to record evidence that the Butlers acted affirmatively with the intent to interfere with class members' decisions to participate in the litigation. The district court found that Cheryl's email, stating that "[o]pt out is crucial!", was a "clear direction … to her employees to respond to class members' inquiries by emphasizing and focusing on opting out, not by directing them to the class notice."

Further, when the district court asked D'Ambrose for an acceptable theory as to why Gilb reached out to class members, she could not provide one. Instead, she said, "I don't believe it was appropriate." The district court found that Gilb's mass email to individuals who would "probably be receiving a notice" indicated that he wanted to connect with class members just as they were learning about the suit via the class notice, or even before that. And Gilb's use of his own language—rather than the complete language of the class notice—to describe the suit indicated an intention to influence class members' opinions. "[Gilb] attempted to catch people early in their thinking about the case and provide his own take on the implications of joining the class or opting out."

Notably, the district court relied on a statement in the Butlers' own brief to support its finding that the Butlers' communications with class members had significant coercive potential based on class members' business relationship with them. Our court has not spoken on this proposition, but another circuit has: "[I]f the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive." *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985); *see also Piekarski v. Amedisys Illinois, LLC*, 4 F. Supp. 3d 952, 955 (N.D. Ill. 2013); *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 927 (N.D. Ill. 2013).

The Butlers list other examples of where they believe the district court's factual findings were clearly erroneous, but the record also supports those findings. We decline to address their arguments in detail. *See United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005) (courts need not address all arguments made by litigants). In the end, the Butlers disagree with

the district court's factual findings, but they fail to show an
abuse of discretion.

### 2. Nature and Amount of Sanctions

Even if the district court's finding of sanctionable conduct
is not vacated, the Butlers assert that the monetary sanctions
imposed against them are excessive. To them, Mullen's attor-
neys' fees and the court's civil penalty were too high.

*Attorneys' Fees.* The Butlers see an insufficient causal con-
nection between their sanctionable conduct and the attorneys'
fees awarded to Mullen. Whether an award is appropriately
connected to the sanctionable conduct is a but-for test: "The
complaining party may recover only the portion of his fees
that he would not have paid but for the misconduct." *Goodyear
Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109 (2017) (cleaned
up). If a party's attorneys would have conducted "similar fact-
gathering activities—taken many of the same depositions,
produced and reviewed many of the same documents," and
undertaken similar discovery absent the opposing party's
misconduct, then it is not appropriate to award attorneys' fees
incurred in conducting those activities. *Fox v. Vice*, 563 U.S.
826, 839 (2011).

But "[u]nder *Goodyear*, calibrating the sanction to the bad
faith conduct only requires 'rough justice' and not account-
ant-like precision." *Fuery v. City of Chicago*, 900 F.3d 450, 469
(7th Cir. 2018). Here, "the district court assessed the total ef-
fect of the misconduct on the integrity of the proceedings." *Id.*
It issued a sanction which would "maintain … the integrity of
the trial process," and compensate for the time that Mullen
and her counsel spent responding to the misconduct. *Id.* As
the district court explained, this time was "reasonably spent

to ferret out what had occurred" and was caused by the Butlers' misconduct. Once misconduct became clear, the court found it necessary to conduct further investigation to discover its nature and extent. Without the Butlers' misconduct, such further investigation would not have occurred.

The Butlers say the district court did not properly connect their sanctioned misconduct with the attorneys' fees awarded. But the court carefully examined the billing records submitted by Mullen's counsel, discussed each allowed cost, and cut out fees and expenses not caused by the Butlers' misconduct.

*Civil Penalty.* The Butlers insist that the district court cannot enter a civil penalty, such as a fine, without a criminal trial. A fine is punitive, they contend, because it goes beyond any fees or damage incurred but for the misconduct. But this assertion misreads *Goodyear*, which limits courts' inherent authority to award attorneys' fees as a sanction beyond what is necessary to compensate the other party. 581 U.S. at 108. Under *Goodyear*, a "fee award may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Id.* (quotations omitted).

But *Goodyear* did not overrule the long-standing rule that courts can impose modest civil monetary sanctions, payable to the clerk, to curb abuses of the litigation process. *See Fuery*, 900 F.3d at 468–69 (expressing doubt that "the *Goodyear* requirement to calibrate the sanction to the bad-faith acts also applies to sanctions other than an award of attorneys' fees"); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 833 (1994) (explaining that sanctions employed "to penalize a party's failure to comply with the rules of conduct governing the litigation process … never have been considered

criminal"). Even after *Goodyear*, this court routinely levies modest fines against both attorneys and litigants for unacceptable litigation conduct. *See, e.g.*, *Camacho-Valdez v. Garland*, 30 F.4th 675, 679 (7th Cir. 2022). The district court was well within its authority to do the same here.

*Bad Faith.* The Butlers argue that they did not act in bad faith and their actions had no tangible impact on the litigation. The sanctions, they say, are therefore not proportionate to the gravity of their offense.

To the contrary, the district court made a detailed record with factual and legal support for its decisions on these points. *See* Section I.B. The Butlers simply disagree with the district court's factual findings. The court explained that the Butlers could not speak with potential class members and gave them an opportunity at the first status hearing to rectify their actions. Both the attorneys' fees and civil penalty were chosen in accord with the principles set forth in *Goodyear* and *Fuery*. The attorneys' fees were properly calibrated to maintain the integrity of the trial process and to compensate Mullen and her counsel for their time spent dealing with the misconduct. And the civil penalty aligned with our precedent. The district court did not abuse its discretion by imposing monetary sanctions against the Butlers.

## B. Non-Monetary Sanctions against Butlers' Counsel

The Butlers contend that sanctions against D'Ambrose are not appropriate because she acted in good faith, and she did not knowingly or intentionally violate the rules of ethics. Yet, we do not have jurisdiction to address this issue. A district court's sanctions order can be appealed only by the person with "the obligation imposed by the previous order." *Feldman*

*v. Olin Corp.*, 692 F.3d 748, 759 (7th Cir. 2012). A party cannot appeal a sanction against the party's attorney. *Id.*

D'Ambrose herself did not file a notice of appeal. Under Federal Rule of Appellate Procedure 3(c)(7), an appeal should not be dismissed "for failure to name a party whose intent to appeal is otherwise clear from the notice" of appeal. But here, D'Ambrose's "intent to appeal is not clear from the notice of appeal—indeed is not so much as hinted at in it." *Reed v. Great Lakes Cos.*, 330 F.3d 931, 933 (7th Cir. 2003). Further, when discussing this issue in their reply brief and at oral argument, the Butlers do not argue that D'Ambrose intended to appeal the sanctions against her. Instead, the Butlers reiterate that they are appealing the district court's order that the Butlers pay attorneys' fees.

### C. Denial of Sanctions against Mullen

The Butlers offer a series of arguments as to why the district court abused its discretion by refusing to impose sanctions against Mullen and her counsel. They cite three sources of authority for those sanctions: Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the district court's inherent power.

Rule 11(b) requires attorneys to certify "'to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances'" that their filings have "adequate foundation in fact and law and lack an 'improper purpose.'" *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957 (7th Cir. 2020) (quoting FED. R. CIV. P. 11). Section 1927 permits courts to levy sanctions against an attorney—not a party—if the attorney has "acted in an objectively unreasonable manner by engaging in a serious and studied disregard

for the orderly process of justice" or where a claim is "without a plausible legal or factual basis and lacking in justification." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 708 (7th Cir. 2014) (quotations omitted). And to sanction a party under its inherent authority, a court must find that the party "willfully abused the judicial process or otherwise conducted litigation in bad faith." *Fuery*, 900 F.3d at 463.

The Butlers' arguments fall into two groups: four addressed by the district court and two additional contentions.

*Use of the Term "Rape."* The Butlers argue that the district court abused its discretion by declining to impose sanctions for Mullen's use of the term "rape." They claim Mullen should be sanctioned because Ricky Butler's past sexual relationships were not legally defined as rape in the State of Illinois in the 1980s.

When denying sanctions against Mullen, the district court was not required to base its decision on the technical meaning of that term decades ago. As that court explained, Mullen's use of "rape" to describe Ricky Butler's sexual relationships with the girls he coached comports with "an accurate and widely (though perhaps not universally) accepted use of the term." Mullen produced declarations under penalty of perjury from several women describing Butler's conduct in terms that could be considered rape. And the Butlers did not explain why Mullen should not have described Ricky Butler's past conduct as rape.

*Alleged Inconsistencies.* Recall, the Butlers asserted that Mullen's actions before and after filing her complaint were inconsistent. After Mullen's lawsuit was filed, she enrolled one of her children in a program associated with the Butlers and

GLV. This shows, the Butlers contend, that Mullen was lying when she claimed to rely on the Butlers' disclosures, which they submit should have resulted in sanctions.

The district court found Mullen's actions to be a "relevant point on the issu[es] of reliance and causation." But it concluded that "Mullen had an at-least-colorable argument that this was not inconsistent with her central allegations." Although the program used GLV's facilities, it was not run by the Butlers. So, enrollment in the program did not undermine Mullen's position that, had she known about the claims of sexual abuse made against Ricky Butler, she would not have participated in any GLV-associated volleyball programs. Mullen therefore was not sanctioned on these facts.

The Butlers disagree that Mullen's argument was colorable, but they fail to explain how that disagreement rises to reversible error. Instead, the Butlers merely repeat their view of the facts, which the district court already addressed and rejected. The district court's explanation of why it denied sanctions on this basis was logical and reasonable.

*A Proper Basis for Bringing Mullen's Suit.* To the Butlers, Mullen brought the suit for reasons beyond just obtaining monetary damages. They object to the district court's decision to the contrary.

As the district court observed, Mullen may have had many purposes for pursuing this case. But if her claims are supported by a good-faith belief in their merits, a parallel reason does not violate Rule 11. Monetary recovery does not need to be the sole—or even primary—goal of filing a lawsuit. *See, e.g.*, *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) ("Congress expressly recognized that a plaintiff who obtains relief

in a civil rights lawsuit does so not for himself alone but also as a private attorney general, vindicating a policy that Congress considered of the highest importance."); *Clark v. TAP Pharm. Prod., Inc.*, 343 Ill. App. 3d 538, 552 (2003) ("The consumer class action provides restitution to the injured and deterrence to the wrongdoer; thus, the ends of equity and justice are attained.").

Mullen sued under the Illinois Consumer Fraud Act, which allows recovery of punitive damages for the specific purpose of "punish[ing] the wrongdoer." *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 81–82 (1994); *see also Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1086 (7th Cir. 2019) (explaining that "punitive damages are retributive in nature"). It is not improper to bring a lawsuit that seeks relief of the type contemplated by a statute for the reasons contemplated by the statute. We review the district court's order with deference. The Butlers have not shown clear error in the district court's conclusion that Mullen had a proper basis to sue.

*Presentation of Evidence.* The Butlers claim Mullen should have been sanctioned for her allegedly inaccurate presentation of the DCFS investigation evidence. They offer a lengthy discussion of documents related to that investigation, and they contend that because of Mullen's purportedly inaccurate submission, the district court considered inadmissible evidence and drew improper conclusions at summary judgment.

The district court found the opposite—that Mullen's characterization of the nature and import of the DCFS proceedings "was supported by evidence in the record." Further, the agency's findings were relevant, even if, as the Butlers contend, the DCFS proceedings are not a matter of public record. And upon being alerted to the alleged misrepresentations, the

court reaffirmed that it agreed with Mullen. The court "dealt at length with the defendants' claims of inaccurate characterization in its ruling on the motion for reconsideration, … and it overruled those claims." There is no basis to disturb the district court's decision that Mullen did not make any statements about the DCFS proceedings that merited sanctions.

On appeal, the Butlers submit two additional contentions that the district court abused its discretion in denying their motion for sanctions against Mullen.

First, the Butlers say the district court failed to explain why it denied a number of viable arguments. A district court abuses its discretion when it "denies sanctions with no explanation, or with an explanation that is so conclusory that the appellate court cannot review the substance of its decision." *Feldman*, 692 F.3d at 759; *see also LaSalle Nat'l Bank of Chicago v. Cnty. of DuPage*, 10 F.3d 1333, 1338 (7th Cir. 1993). But that is not the case here.

The district court provided dozens of pages of factual and legal analysis and addressed many of Mullen's and the Butlers' primary arguments. To deny a motion for sanctions, district courts do not need to address and explain why they have rejected every argument and every fact raised by the moving party. *See Tobey v. Chibucos*, 890 F.3d 634, 655 (7th Cir. 2018) (affirming one-page order denying sanctions where the district court "cited the correct standard for deciding the question and provided a sufficient explanation to allow for meaningful appellate review"); *Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022) ("Of course, a district court is not required to be persuaded by every argument parties make, and it may, in its discretion, dismiss arguments that it does not find compelling without a detailed explanation.").

On appeal, we will "uphold any exercise of the [district] court's discretion that could be considered reasonable[.]" *Tobey*, 890 F.3d at 655. The district court discussed several of the Butlers' arguments in detail and rejected them. The district court did not err by following this court's direction that "arguments clearly without merit can, and for the sake of judicial economy should, be passed over in silence." *Cunningham*, 429 F.3d at 678.

Second, the Butlers contend "[e]ach misrepresentation advanced by Mullen and her attorneys added to the abuse of the judicial process." To the Butlers, here the "whole of abusive action is greater than the sum of the parts of which it is made" and "these incremental abuses chip away at the fair administration of justice … ." *Fuery*, 900 F.3d at 455. So, the district court should have sanctioned Mullen's alleged misconduct.

But the sum of the Butlers' arguments is as unpersuasive as are the parts. The few cases they cite for this point speak to general standards of review and broad understandings of judicial power and its limits. None contain similar fact patterns that would counsel ruling in their favor. Even in aggregate, the Butlers' arguments fail to show an abuse of discretion for refusing to sanction Mullen and her counsel.

### III. Conclusion

The district court did not abuse its discretion or clearly err in sanctioning the Butlers and their attorney or in declining to sanction Mullen.

For these reasons, we AFFIRM the district court in full.