In the

# United States Court of Appeals
### For the Seventh Circuit

———————

No. 25-1905

JEWEL SANITARY NAPKINS, LLC,

*Plaintiff-Appellant,*

*v.*

BUSY BEAVER PUBLICATIONS, LLC,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:23-cv-00126 — **Stephen L. Crocker**, *Magistrate Judge.*

———————

ARGUED FEBRUARY 17, 2026 — DECIDED JUNE 10, 2026

———————

Before BRENNAN, *Chief Judge*, and RIPPLE and TAIBLESON, *Circuit Judges*.

BRENNAN, *Chief Judge*. Jewel Sanitary Napkins sells feminine hygiene products containing materials with purported health benefits. Over the past few years, Jewel has advertised its products to the Amish community through Busy Beaver's advertising publications. After Busy Beaver published a reader-submitted ad, Jewel sued for defamation, alleging the ad made false accusations about the safety of Jewel's

products. Because Jewel presents no evidence that would allow a jury to reasonably conclude that Busy Beaver acted with actual malice, its claim fails.

## I

Jewel Sanitary Napkins, LLC is a Georgia company that sells "all-natural sanitary napkins and pads" under the "REIGN" brand. In the past few years, Jewel has developed a market within the Amish community for these products. One is the Reign pad which Jewel markets as containing a layer of the "Nobel Prize Winning material 'Graphene.'" Jewel's website and social media promote graphene as "provid[ing] various health benefits" including relieving abdominal cramps, balancing the body's PH (acid-base) levels, eliminating bacteria and aroma, fighting fatigue, and boosting metabolism and the immune system. The website also claims that "[g]raphene moves heat away from your core and contains vibrational energy." As part of its promotion, Jewel uploaded a video to YouTube demonstrating that a Reign pad's graphene strip can light a lightbulb.

Busy Beaver Publications, LLC is a Wisconsin company that publishes and distributes The Busy Beaver, an advertising publication with several regional editions. Since 2019, as part of Jewel's strategy to market to the Amish and Mennonite communities, Jewel's distributors have placed hundreds of advertisements in various Busy Beaver publications.

Around August 2022, Busy Beaver's Pennsylvania office received an ad submission from Betty Lantz questioning the safety of the Reign products. Lantz included her name and address but checked "no" to a question asking if she wanted her name and address published in the ad. A Busy Beaver

typist then entered Lantz's submission into an Excel sheet with other ads to be published in the August 26, 2022 edition of its publication, The Busy Beaver of PA+.

Once the submission was typed into the Excel file, Ivan Lapp, a salesman for The Busy Beaver of PA+, proofread it. Lapp, who reads about 1,400 ads per week, raised no concerns about the submission.

In the months before publication, rumors had circulated in the Amish community about Jewel's products, including that the Reign pads covertly delivered vaccines, contained radiation and metal, and caused cancer, miscarriages, and infertility. Though Lapp was familiar with ads about Reign products, he conducted no further research about the submission. The ad was published in the August 26 edition of The Busy Beaver of PA+.

The next month, Lee Eicher, a Busy Beaver sales representative for Michigan and Indiana, received a call from a Jewel distributor claiming that the published ad contained false information about Reign pads. Because Busy Beaver does not print retractions but offers the opportunity to print correct information, Eicher emailed Jewel's chief executive officer offering about three months of free advertising, amounting to over six million pages. Jewel did not accept the offer and instead sued Busy Beaver for libel and trade libel, invoking diversity of citizenship federal jurisdiction under 28 U.S.C. § 1332(a)(1).

During discovery, Jewel tried to obtain Lantz's original submission. Busy Beaver responded that Lapp was responsible for proofreading the ad, and that under Busy Beaver's standard practice, the original submission was likely

shredded. For months, Jewel did not follow up or attempt to subpoena or depose Lantz.

Busy Beaver moved for summary judgment. After the district court's deadline for filing dispositive motions passed, Jewel filed a spoliation motion, claiming that Busy Beaver intentionally destroyed Lantz's original submission form. Jewel asked the court to impose an adverse inference because the destroyed evidence "would have shown that Busy Beaver acted with actual malice."

In response, Busy Beaver subpoenaed Lantz, who provided the original submission form. Busy Beaver then gave Jewel a copy of the submission form and a declaration signed by Lantz. Jewel withdrew its spoliation motion.

Six days later, Jewel moved to hold its summary judgment motion in abeyance. The district court denied this motion. Jewel then sought sanctions against Busy Beaver for failing to timely disclose the existence of the original submission, claiming it was prejudiced in its discovery efforts and opposition to summary judgment. For these reasons, Jewel also requested that the court reopen summary judgment briefing. The court denied this motion and granted Busy Beaver summary judgment. Jewel timely appeals.

## II

We review a grant of summary judgment de novo, construing the evidence and drawing inferences in the nonmoving party's favor. *Bourke v. Collins*, 142 F.4th 918, 921 (7th Cir. 2025). "An inference is not reasonable if it is directly contradicted by direct evidence provided at the summary judgment stage, nor is a 'conceivable' inference necessarily reasonable at summary judgment." *Downing v. Abbott Lab'ys*, 48 F.4th 793,

815 (7th Cir. 2022) (citations omitted). Jewel contends that the court erred "by failing to recognize evidence as material, drawing inferences against Jewel, crediting admittedly 'muddled' testimony, weighing evidence, fact-finding, and failing to review the record cumulatively."

**A**

We must first decide which state's law applies. When there is no dispute, we apply "the law of the state in which the federal court sits." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 522 (7th Cir. 2022) (citation omitted). In this diversity case, that is Wisconsin.

Under Wisconsin law, a plaintiff claiming defamation must show that the challenged statement was (1) false, (2) communicated by conduct, speech, or in writing to a third party, and (3) "unprivileged and tends to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her." *In re Storms v. Action Wis. Inc.*, 2008 WI 56, ¶ 37 (Wis. 2008) (citation omitted); *Sidoff v. Merry*, 2023 WI App 49, ¶ 13 (Wis. Ct. App. 2023). Additionally, the constitutional guarantees of freedom of speech and press require a public figure to prove actual malice to recover damages for a defamatory statement relating to his official conduct. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). Jewel concedes it is a limited purpose public figure, so it must show that Busy Beaver's statements were made with actual malice. *See id.*

Actual malice requires a defamatory statement to be made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 280. "Reckless disregard" is a subjective standard, requiring a plaintiff to show the

statement was published "despite a high degree of awareness of [its] probable falsity," or the defendant "in fact entertained serious doubts as to [its] truth[.]" *Madison v. Frazier*, 539 F.3d 646, 657–58 (7th Cir. 2008) (citation omitted). While plaintiffs can prove this state of mind with circumstantial evidence, "courts must be careful not to place too much reliance on such factors." *Chi. Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 464 F.3d 651, 655 (7th. Cir. 2006) (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989)).

Jewel offers several arguments that Busy Beaver acted with actual malice. These include that altered punctuation materially changed the message, the ad was inherently improbable, and that Busy Beaver deviated from its typical practices, failed to verify the fact or source, and refused to retract the ad.

**1**

First, Jewel claims altered punctuation marks in the ad "change[d] a critical portion of the defamatory language from an express statement of fact to … [a] question and … remove[d] inflammatory emphasis." At publication, Busy Beaver changed some of the submission's punctuation to commas:

> **Lantz's Submission:**
>
> Attention! Are the Reign products as safe as they say? Graphene is a conductive metal meaning it attracts electrical waves/radiation from the air. Do we want this close to our bodies? Will we see serious consequences for using this product? Don't just go by what the company says!! – A concerned sister –

**Busy Beaver's Publication:**

Attention! Are the Reign products as safe as they say? Graphene is a conductive metal meaning it attracts electrical waves/radiation from the air, Do we want this close to our bodies, Will we see serious consequences for using this product? Don't just go by what the company says, A concerned sister.

These alterations, Jewel claims, were material evidence for determining actual malice.

But to prove that point, a plaintiff must show the alterations were deliberate and resulted in a material change to the meaning conveyed by the statement. *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991). We have previously held that a defendant did not act with "actual malice" when publishing statements that were "substantially true" and could be "reasonably … interpreted" as the truth. *Harris v. Quadracci*, 48 F.3d 247, 253 (7th Cir. 1995) (applying Wisconsin law).

Jewel does not explain how the changes in punctuation were either deliberate or resulted in a material change. The changes made—replacing four punctuation marks with three commas in the fourth and sixth lines of each excerpt above, and two dashes with a period in the final two lines—do not amount to an alteration "having a different effect on the mind of the reader." *Masson*, 501 U.S. at 517 (citation modified). There, a psychoanalyst sued *The New Yorker* magazine, claiming that the publication intentionally misquoted his interview by placing quotation marks around phrases he had not said. *Id.* at 502. The Court held that the inclusion of quotation marks showed actual malice only if the alterations were

deliberate and materially changed the meaning of the statement. *Id.* at 517, 524–25. But not every "alteration beyond correction of grammar or syntax by itself proves falsity in the sense relevant to determining actual malice under the First Amendment." *Id.* at 514. Besides, Jewel asserts that the original unaltered submission was also false. Because Jewel cannot distinguish how the altered punctuation was deliberate or materially changed the meaning of the statement, its alteration argument does not persuade.

Next, Jewel contends the ad "was inherently improbable and highly disparaging," thereby allowing an inference of actual malice. To Jewel, the ad was unusually disparaging, so the court should have inferred actual malice under *Babb v. Minder*, 806 F.2d 749 (7th Cir. 1986).

Although the submission may have stood out to Lapp because of its tone, the ad was not inherently improbable or highly disparaging given Jewel's own promotional claims and previous Jewel ads published by Busy Beaver. *See St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). Regardless, Lapp's "[f]ailure to investigate does not in itself establish bad faith." *Id.* at 733; *see also Harte-Hanks*, 491 U.S. at 688 ("failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard").

The question is whether the statement was made with actual malice. Despite Jewel's contentions, this means the district court did not need to apply *Babb*. That case considered whether the defendant failed to investigate statements regarding the plaintiff's workplace sexual conduct that could have been proven true or false. 806 F.2d at 757–58. Because the defendant—who was "definitely aware" of the statements'

potential falsity—did not present an innocent construction of the statement under Illinois law, the statements were treated as defamatory per se. *Id.* at 756, 758. For this case, it does not matter whether the ad was "highly disparaging." There is no evidence that Lapp or any other Busy Beaver employee recklessly disregarded the truth or had any serious doubts about the veracity of the claims in publishing the statement. *See In re Storms*, 2008 WI at ¶ 71. That alone defeats Jewel's argument.

Jewel attempts to confuse this analysis by presenting the facts in a manner unsupported by the record. On Jewel's telling, Lapp went to Lantz's house to confront her about the submission before publication. If this were true, it could show a failure to investigate and verify facts. *See St. Amant*, 390 U.S. at 732–33. But the trip to Lantz's house occurred after publication and after Busy Beaver was notified of the problematic nature of the ad. Lapp also testified that although the ad caught his attention because it was "questioning somebody else's product," he "le[t] it go" because he "didn't have a lot of time to do any research." So, the facts do not show Lapp had an awareness of probable falsity that could point towards actual malice.

**2**

Jewel's next arguments concern Busy Beaver's actions. The district court held that the publishing company's alleged deviation from internal practices by printing the ad anonymously does not support a finding of actual malice. Jewel contests this conclusion, arguing that the court incorrectly weighed disputed testimony from Busy Beaver employees Hershberger and Eicher. But Jewel's challenge to the court's weighing of testimony is weak. The record shows that Busy

Beaver previously published submissions anonymously. So, the decision to publish the ad without identifying Lantz does not depart from past practice.

Further, the district court may consider a fact undisputed when a party does not properly respond under Federal Rule of Civil Procedure 56(e). Throughout its objections and responses to Busy Beaver's proposed findings of fact, Jewel fails to directly address Busy Beaver's propositions, mainly by claiming the findings are "self-serving" without any further legal basis.

In the alternative, Jewel posits that Busy Beaver's decision to publish the ad anonymously is evidence of actual malice. But the case Jewel relies upon, *St. Amant*, states the use of an "*unverified* anonymous" source is circumstantial evidence of actual malice. 390 U.S. at 732 (emphasis added). It does not address a *verifiable* source who requests anonymity. *See id.* Although the ad was published anonymously, Lantz disclosed her name and address on the submission form. Thus, the concern over whether the statement was made in good faith is mitigated because there are fewer "obvious reasons" to doubt Lantz's veracity and the information could be sourced. *Id.*

Busy Beaver's alleged failure to fact-check before publication also cannot support a finding of actual malice. Probative evidence of actual malice is established when there are "obvious reasons to doubt the veracity of the informant or the accuracy of [the] reports." *Harte-Hanks*, 491 U.S. at 688 (citation omitted); *see also In re Storms*, 2008 WI 56 at ¶ 39. Lapp stated that he "did not know … if any of the statements in the advertisement were true or false." But that is not his job. Lapp is not a fact-checker, but a proofreader who reviews 1,400 ads a

week and does not use the Internet for any work-related purpose beyond email.

And post-publication, Busy Beaver's failure to retract is not evidence of its reckless disregard for the truth. In certain circumstances, refusal to retract can be evidence of actual malice. *Milsap v. J./Sentinel, Inc.*, 100 F.3d 1265, 1271 (7th Cir. 1996) (per curiam) (interpreting Wisconsin law). But this is not one of them. Busy Beaver's policy is that the company does not retract articles. And in lieu of retracting the ad, Busy Beaver offered three months' worth of ads, amounting to over six million pages of free advertising. Jewel provides no other evidence to support its contention that Busy Beaver's refusal to retract was based on actual malice.

Throughout its opening brief, Jewel argues the district court erred by improperly weighing evidence and finding facts in contravention of summary-judgment standards. Yet, if a party "fails to properly address another party's assertion of fact" under Rule 56(e), the court may "consider the fact undisputed for the purposes of the motion." FED. R. CIV. P. 56(e)(2). And the court is entitled to "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]" FED. R. CIV. P. 56(e)(3). Here, the district court relied on the undisputed facts and was well within its discretion to consider certain disputed facts as undisputed when Jewel failed to properly address or respond to Busy Beaver's proposed facts.

A reasonable jury could not conclude that the ad's claim that graphene "attracts electrical waves/radiation from the air" was improbable when Jewel advertised its product as containing "vibrational energy." Even more, Jewel's

chemist—retained to assess the veracity of the rumors circulating about its products—described graphene as "a quasimetal" and "highly conductive for both electricity and heat." Accordingly, the district court correctly decided that the circumstantial evidence presented by Jewel was insufficient "even in the aggregate" for a reasonable jury to find that Busy Beaver acted with actual malice.

**B**

Even if its merits argument falls short, Jewel seeks sanctions for Busy Beaver's delay in producing the original submission. In its view, Busy Beaver "knew of the existence and location of the Submission at the outset of discovery" but did not timely disclose it, leaving Jewel to unnecessarily expend resources in opposing summary judgment. We must evaluate whether the district court erred by denying Jewel's motion for sanctions.

To impose sanctions, a district court must make a finding of "bad faith, designed to obstruct the judicial process, or a violation of a court order." *REXA, Inc. v. Chester*, 42 F.4th 652, 671 (7th Cir. 2022) (citation omitted). We review the decision of whether to impose sanctions for abuse of discretion. *Id.* This review is deferential because, in ruling on sanctions, the district court "exercises its inherent power." *Mullen v. Butler*, 91 F.4th 1243, 1250 (7th Cir. 2024). We reverse only if "no reasonable person would agree with the trial court's ruling." *REXA, Inc.*, 42 F.4th at 672 (citation omitted).

There is no evidence that Busy Beaver acted in bad faith. Though Busy Beaver informed Jewel that its standard practice was to shred advertising request forms 30 days after receipt, it identified Lantz and Lapp as likely possessing discoverable

information. Busy Beaver also notified Jewel it was "attempting to locate [the] responsive documents and w[ould] produce responsive documents if they are located." Once Busy Beaver learned Lapp had the Excel file containing the typed version of the submission, it provided the information to Jewel. And when Busy Beaver received the original submission after subpoenaing Lantz, it handed over the form to Jewel a day later.

Moreover, delays and extra costs can be explained by Jewel's lack of diligence. Jewel had notice in June 2023 that it could depose Lantz or Lapp to obtain information about the submission. Yet, Jewel waited almost nine months to subpoena Lantz and nearly ten months to depose Lapp. Any mischaracterization of the evidence is likely due to Jewel's delay, not Busy Beaver's actions. A party who tries to forestall summary judgment is not entitled to further discovery. *Citizens for Appropriate Rural Rds. v. Foxx*, 815 F.3d 1068, 1082 (7th Cir. 2016). Having held actionable information for months, Jewel was not entitled to a windfall after the summary judgment briefing deadline. And Jewel's delays do not justify imposing sanctions against Busy Beaver.

Jewel also fails to articulate an alternative litigation strategy if it had known earlier about the original submission form. Even when journalists have destroyed notes, courts have declined to apply an adverse inference of actual malice when unsupported by the facts. *See Torgerson v. J./Sentinel, Inc.*, 210 Wis.2d 524, 551–52 (Wis. 1997); *Chang v. Michiana Telecasting Corp.*, 900 F.2d 1085, 1090 (7th Cir. 1990). And Jewel cannot even show intentional destruction because it obtained the submission.

The district court, therefore, did not abuse its discretion in denying Jewel's motion for sanctions. Indeed, the district court aptly admonished Jewel for focusing its litigation strategy on sanctions instead of properly conducting discovery and litigating on the merits.

## III

The district court correctly concluded that Jewel failed to present evidence that would allow a reasonable jury to find that Busy Beaver acted with actual malice. The court also properly denied Jewel's request to reopen summary judgment briefing, and it did not abuse its discretion in denying Jewel's motion for sanctions.

AFFIRMED